RECEIVED
EFILE 11/19/2020

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK COUNTY SUPERIOR COURT

| | |
|---|---|
| MELINDA SANTINI, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TUFTS MEDICAL CENTER PARENT, AND )<br>CATHY MCCUE, )<br>Defendants. )<br>) | C. A. No. _____ |

# COMPLAINT

## Introduction

1. By this action, Plaintiff Melinda Santini seeks damages under the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, the Workers' Compensation Act, M.G.L. c. 152 s. 75B, and the Massachusetts Wage Act, M.G.L. c. 149 s. 148.  Santini alleges disability discrimination and retaliation as well as unpaid accrued vacation time.

## Parties

2. Plaintiff Melinda Santini ("Santini") is a former employee of Tufts and a resident of York, Maine.

3. Defendant Tufts Medical Center Parent ("Tufts") is a non-profit corporation with a principle place of business at 800 Washington Street, Boston, MA, with six or more employees.

4. Defendant Cathy McCue ("McCue") is employed by Tufts as a Nurse Manager.  Upon information and belief, McCue is a resident of Weymouth, Massachusetts.

1

**Procedural History**

5. This Court has jurisdiction over Santini's discrimination and retaliation claims pursuant to M.G.L. c. 151B s. 9.

6. Santini electronically filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") on August 10, 2020 and the matter was docketed on the same date. Santini has tolled the 90-day requirement to file in Superior Court.

7. This court has jurisdiction over M.G.L. c. 152 s. 75B claims pursuant to s. 75B (2).

8. This Court has jurisdiction over Wage Act claims pursuant to M.G.L. c. 212 s. 3-4.

9. On August 10, 2020, The Attorney General's office authorized the Plaintiff to pursue a private right of action for this wage claim.

**Facts**

10. Santini is a Registered Nurse formerly employed by Tufts. She worked in the lock-down psychiatric unit from October 7, 2002 until Tufts terminated her on October 31, 2019.

11. Santini is a highly experienced nurse. She consistently received positive feedback and work evaluations during her tenure at Tufts, including a statement that she is an "excellent charge nurse" who is "extremely thorough and accurate in her practice." She felt very fulfilled in her position at Tufts, as she has both extensive medical and psychiatric nursing experience and could provide care on her unit for patients with both of these types of medical issues.

12. Santini suffered an injury to her shoulder on April 21, 2018, after an incident at work when she was lifting a very large patient (over 250 lbs.) with one other staff person. The unit was understaffed that shift, with only four staff members for twenty patients, and it

was not possible to have additional assistance moving the patient. Santini felt a pop and a burning in her arm, and quickly realized she needed to finish her shift early. She attempted to work her shift the next day, then drove herself to the emergency room to seek medical attention, where she was initially diagnosed with calcium build up and bursitis. She applied for a Leave of Absence, effective April 22, 2018.

13. Santini was ultimately diagnosed with a rotator cuff tear and a bicep tendon tear as well as chronic regional pain syndrome, which at times causes her severe nerve pain. She experiences reduced movement and use of her arm and shoulder. Santini also has diagnoses of anxiety and depression; she began to seek care from a therapist shortly after her injury, due to both her injury and to Tufts' subsequent discriminatory behavior. She continued these sessions weekly until approximately February of 2020, when she lost her health insurance (in March) and no longer was able to afford the out-of-pocket expense.

14. Santini does not recall having any communication with Tufts' Human Resources Department when she initially began her leave of absence. She did receive one call from Nurse Manager Cathy McCue ("McCue") soon after she first sought medical attention, on or about May 1, 2018. Santini recalls receiving McCue's phone call as she was leaving her doctor's office. Santini informed McCue that she was able to work, but could not lift more than five pounds. McCue responded, "Oh, no. You can't come back with any restrictions."

15. According to doctors notes from the period, Santini's doctor felt it was safe for her to work with lifting restrictions for approximately six months, from May, 1, 2018 until October 31, 2018 when she had her first surgery; and again from the period of February 6, 2019 to August 15, 2019, an additional period of seven months.

16. Shortly after her leave of absence began, Ms. Santini attempted to log into the employee information system known as the "Lawson Portal" where she could access sick time and vacation time accrual information, benefits information, and internally-posted open positions, among other things. She discovered that her access to the system had been shut off, a violation of Tufts policy.

17. Santini attempted to regain access to the Lawson portal, by calling the Human Resources Department. She was told that she needed to call the IT department in order to rectify the situation. She did so, but was ultimately told that she could not regain access once access had been "shut off" until she returned back to work.

18. During the period of May 1 to October 1 of 2018, although Santini was able to perform the basic functions of her job, and could also perform the functions of many other positions available throughout the Tufts system, she was told by her supervisor that she could not return to work. Santini never received any follow up calls from HR or McCue indicating that she could come back to work, or offering her other positions. No one discussed alternative accommodations with her or whether or not the department or the institution as a whole could or could not accommodate the restrictions her doctor required for her.

19. The Collective Bargaining Agreement ("CBA") between Tufts and the Nurses Association states that a nurse may take a leave of absence due to an industrial accident "until approved by an attending physician for return to work."

20. Santini was shocked by Tufts's decision to prohibit her from returning to work, not only because she felt she could return to work and do her job well, but also because there had

been other employees on the unit that had returned to work and were given accommodations including lifting accommodations.

21. For instance, Wendy MacDonald worked in Santini's unit and was granted an accommodation to wear a boot on an injured foot during a shift.  Granis Stuart was granted an accommodation to wear a wrist brace while working on the unit.  Donna Pasquantonio, upon information and belief, called out due to an injury and McCue called her and told her she was required to come in, and was given a reduced assignment by McCue.  Pasquantonio was granted an accommodation to wear a wrist brace during this time.  Although there was no formal policy in place, it was understood by Santini and other nurses on the unit that during the time these three individuals required assistive devices/ braces, they would not be lifting patients.  These three accommodations took place on the same lock down psychiatric unit that Santini worked on, during the approximate period of May of 2017 to the present.  Chris Cordair, a security officer who sometimes worked on the unit, also wore a cast or other immobility device on his arm while working during part of the approximate period, and was usually required to assist in patient restraints.

22. Additionally, the unit occasionally employed Patient Care Attendants ("PCAs") for those patients who required a 1:1.  On multiple occasions, Santini observed McCue allow PCAs to work on the unit, who required a cane for ambulating.  It was department policy for these PCAs to leave their canes behind the nursing desk, due to a concern that a patient could potentially cause harm with a cane, without any consideration as to whether the PCAs could safely work without their assistive devices.

23. Due to the fact that Santini was injured on the job, and also that Tufts refused her an accommodation, Santini pursued Workers' Compensation Benefits.

24. The next interaction Santini had with Tufts management was with the Human Resources department in approximately November 12, 2018, less than two weeks after her first surgery. She spoke with two HR representatives, Donna Bonkowski and Alexandria Taylor. Santini was informed that when an employee has been out for six months, their position will no longer be held for the individual on leave and can be filled by another candidate per Tufts policy. Santini was informed that when she was "better," she could reapply, and if the position was available, she would be considered for the position. Neither HR representative asked Santini for more information about her limitations, whether she felt she could perform her position with limitations, or whether she would like Tufts to consider her for other positions within the system. Upon information and belief, Tufts had already filled Santini's position prior to this conversation.

25. Santini had previous nursing experience including eleven years of family practice; she had managerial experience as well as triage nursing experience. She was well qualified to work in many departments and roles within the Tufts system. However, in addition to not being allowed to come back to the lock-down pysch unit, she was also not offered any alternative positions after she indicated she was ready to return to work in May of 2018.

26. For several weeks while she was recuperating from surgery, from November 1, 2018 to February 6 2019, Santini's doctor, Mayo Noerdlinger, MD, determined it was not safe for her to work.

27. On approximately January 15, 2019, Santini discovered she and her family no longer had health insurance coverage and that her coverage had been terminated as of December 13, 2018 without notice to her. Santini made several attempts to speak with someone in Tufts' HR Department in order to rectify the issue. After many days of no response, Alexandra Mottern from Tufts HR informed Santini that the coverage termination was due to an "error" in the computer system. It took several weeks for Santini to regain coverage during a time in her life when access to medical care was crucial to her wellbeing. When Santini called her health insurance provider, Blue Cross Blue Shield ("BCBS"), to inquire as to why and how coverage had been terminated, a BCBS staff person informed her that a Tufts HR staff person would have had to physically call BSBC in order to stop her coverage.

28. On February 6, 2019, Dr. Noerdlinger allowed Santini to return to work. Restrictions specified: "She may return to work in a light duty position and should not lift with the left arm and should do not work above shoulder level." As Santini's doctor was aware that Tufts would not allow her to return with any restrictions, the doctor's note from this date also indicates that "These restrictions would prevent her from working as a nurse on the medical or psychiatric unit."

29. May 1, 2019, Santini underwent an MRI, which showed that the tear on her rotator cuff was still there. Once a second surgery was approved for August 15, 2019.

30. On June 26, 2019, Santini was notified by the Tufts Medical Benefits Department by mail that she had accrued 51.94 hours of vacation time.

31. On August 20, 2019, Ms. Santini contacted the Tufts Benefits Service Center via e-mail and requested to cash out her accrued vacation time.

32. It is Tufts policy to pay out vacation time to employees when the employee separates from employment.

33. On October 1, 2019, Santini returned to Dr. Noerdlinger's office.  Due to the fact that Santini was still having pain after undergoing her second surgery, Dr. Noerdlinger suspected that Santini may have nerve damage and therefore should not go back to working as a floor nurse.  At this time, Santini's doctor determined that Santini was not able to perform chest compressions and should not go back to working in her previous position.  It was unclear at this time if and when Santini could return to performing chest compressions, or whether Santini would ever be able to make a full recovery.  However, Tufts management failed again to engage in the interactive process with Santini at this time, to determine whether there were other positions in the Tufts system that she could perform. No one in Tufts management discussed her health needs with her at this time, or whether she would be considered for any other positions.

34. On October 7, 2019, Santini saw a specialist, Dr. Manuel Sanchez, and was officially diagnosed with complex regional pain syndrome.

35. On November 7, 2019, Santini was informed by mail that she had been terminated from her position. The letter of termination was dated November 1, 2019 and signed by Espino. The letter notifying Santini of this decision stated that "Due to your [Santini's] being out of work at Tufts Medical Center for over a period of a year, the policy is to terminate your employment." The termination was effective October 31, 2019.  There is no indication that anyone engaged in an interactive dialogue with Santini at this time to determine whether there were reasonable accommodations that could be implemented to allow her to return to work and perform the essential functions of her job, whether there

were other positions available to Santini for which she could apply, or whether it was a hardship for the employer to maintain Santini's status as an employee. Additionally, Espino wrote: "If you should receive clearance from your doctor to return to work, you are welcome to search job listings that are posted on the Tufts website…" At the time Santini received the November 1st letter, Espino was already aware that Santini's doctor had given her clearance to return to work, albeit with restrictions. Santini's colleague, Rebecca Collins, was terminated the same day of October 31, 2019, despite being injured and starting her Leave of Absence from Tufts during a different time period than Santini.

36. Shortly after her termination on November 21, 2019, Santini was notified by her doctor's office that her medical benefits had been terminated without notice to her. She did not receive any paperwork instructing her how to elect COBRA until after her medical insurance had been terminated. On November 21, 2020, Santini emailed Tufts and was told that it can take 1-2 weeks to receive COBRA packets. When Santini did receive her COBRA packet in early December, the packet was dated December 2, 2020.

37. After many attempts to communicate with HR regarding the status of her vacation time payout, on December 11, 2019 Ms. Santini received a response email stating that she had no accrued vacation time and that the June letter was in error. Ms. Santini requested, but did not receive, adequate documentation supporting Tufts' position that she did not have vacation time accrued and an explanation as to how this error had occurred.

38. It is unclear to Santini at this time whether Tufts was in error when it notified Ms. Santini that she did not have 51.94 hours of vacation time banked.

39. At the time Santini was terminated, her hourly pay rate was $66.37. She therefore would have been owed $3,447.25 for the banked vacation time indicated in the June 26, 2019 letter.

40. Tufts refused to pay Santini this amount, in violation of M.G.L. ch. 149 s. 148.

## COUNT I
## M.G.L. c. 151B HANDICAP DISCRIMINATION

41. Plaintiff incorporates by reference all of the above factual allegations.

42. Tufts is an employer under and subject to M.G.L. C. 151B.

43. Santini's diagnoses of a rotator cuff tear, a bicep tendon tear, and chronic regional pain syndrome qualified her as a handicapped individual within the meaning of M.G.L. c. 151B. Santini has been deemed disabled in order to receive Workers' Compensation benefits.

44. Santini had a qualifying disability or was perceived by Defendants as having a disability at all times relevant to this Complaint.

45. Santini was qualified for her job as a nurse and able to perform the essential functions of her job with or without reasonable accommodation.

46. Defendant refused to provide Santini with a reasonable accommodation.

47. Defendant terminated Santini because of her disability.

48. Santini has suffered financial and emotional damages due to Defendants' unlawful behavior.

## COUNT II
## M.G.L. c. 151B FAILURE TO ACCOMMODATE

49. Plaintiff incorporates by reference all of the above factual allegations.

50. Tufts is an employer under and subject to M.G.L. C. 151B.

51. Santini's diagnoses of a rotator cuff tear, a bicep tendon tear, and chronic regional pain syndrome qualified her as a handicapped individual within the meaning of M.G.L. c. 151B.

52. Santini had a qualifying disability or was perceived by Defendants as having a disability at all times relevant to this Complaint.

53. Santini was qualified for her job as a nurse and able to perform the essential functions of her job with or without reasonable accommodation.

54. Santini requested a reasonable accommodation, namely, that she not lift more than five pounds at a time.

55. Defendant refused Santini's request for a reasonable accommodation, failed to engage in any interactive dialogue about whether a reasonable accommodation could be provided to Santini, failed to provide Santini with any accommodation, and terminated Santini's employment because of her disability.

56. Santini has suffered financial and emotional damages due to Defendants' unlawful behavior.

### COUNT III
### M.G.L. c. 151B RETALIATION

57. Plaintiff incorporates by reference all of the above factual allegations.

58. Tufts is an employer under and subject to M.G.L. C. 151B.

59. Santini's diagnoses of a rotator cuff tear, a bicep tendon tear, and chronic regional pain syndrome qualified her as a handicapped individual within the meaning of M.G.L. c. 151B.

60. Santini had a qualifying disability or was perceived by Defendants as having a disability at all times relevant to this Complaint.

61. Santini was qualified for her job as a nurse and able to perform the essential functions of her job with or without reasonable accommodation.

62. Santini engaged in protected conduct under M.G.L. c. 151B, including but not limited to requesting an accommodation to assist with her job and requesting to be returned to work.

63. Santini suffered adverse employment actions, including but not limited to termination of employment by the Defendant, because of her request for a reasonable accommodation and for attempting to avail herself of her rights under M.G.L. c. 151B.

64. Santini has suffered financial and emotional damages due to Defendants' unlawful behavior.

## COUNT IV
## M.G.L. c. 152 s. 75B DISCRIMINATION

65. Plaintiff incorporates by reference all of the above factual allegations.

66. Tufts is an employer under and subject to M.G.L. c. 151B and M.G.L. c. 152.

67. Santini's diagnoses of a rotator cuff tear, a bicep tendon tear, and chronic regional pain syndrome qualified her as a handicapped individual within the meaning of M.G.L. c. 151B.

68. Santini had a qualifying disability or was perceived by Defendants as having a disability at all times relevant to this Complaint.

69. Santini was qualified for her job as a nurse and able to perform the essential functions of her job with or without reasonable accommodation.

70. Santini filed for Workers' Compensation benefits after she began her Leave of Absence.

71. Tufts terminated Santini due to her filing of Workers' Compensation benefits and for attempting to avail herself of her rights under M.G.L. c. 152.

72. Santini has suffered financial damages due to Defendants' unlawful behavior.

## COUNT V

### VIOLATION OF MASSACHUSETTS WAGE ACT

73. Plaintiff incorporates by reference all of the above factual allegations.

74. Santini was terminated from her position at Tufts on November 1, 2019.

75. Santini was promised vacation payment as defined in M.G.L. ch. 149 s. 148, per Tufts written policy and in the June 26, 2019 letter referenced above.

76. Santini has not received payment for the vacation accrual referenced in the June 26 letter as of the date of this Complaint.

## COUNT VI

### BREACH OF CONTRACT

77. Plaintiff incorporates by reference all of the above factual allegations.

78. As an alternative theory to Count I, Plaintiff alleges Tufts material breached a contract between Santini and Tufts.

79. Plaintiff entered into an agreement with Tufts whereby Tufts would compensate the Plaintiff for unused vacation time per Tufts policy upon termination of the employment relationship, and promised her specific payment in the June 26, 2019 letter.

80. Plaintiff, by performing her work responsibilities, accepted Tufts' promises and performed valuable services for Tufts, in reliance that she would be compensated according to Tufts' policies.

81. Tufts breached this contract by failing to pay Santini for her accrued vacation time.

82. Employee suffered loss of income as a result of the breach.

## COUNT VII

## PROMISSORY ESTOPPEL

83. Plaintiff incorporates by reference all of the above factual allegations.

84. As an alternative theory to Counts I and II, Plaintiff alleges that Defendant made a promise to pay Plaintiff her accrued vacation time in the June 26, 2019 letter referenced above.

85. Plaintiff relied upon the promise and managed her finances in reliance on the promise to be paid for the vacation time.

86. Plaintiff suffered damages as a result of Defendant's actions.

## COUNT VIII

## QUANTUM MERUIT

87. Plaintiff incorporates by reference all of the above factual allegations.

88. As an alternative theory to Counts I-III, Santini alleges that she performed valuable services for Tufts, which were accepted and enjoyed by Tufts.

89. Santini reasonably expected to be compensated for her unused vacation time due.

90. Tufts reasonably expected to compensate Santini for her unused vacation time.

91. Tufts was unjustly enriched when it failed to compensate Ms. Santini for her unused vacation time.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Compensatory damages, including economic losses and emotional distress;

b. Multiple and liquidated damages;

c.    Punitive damages;

d.    Attorneys' fees;

e.    Front and back pay;

f.    Prejudgment interest;

g.    Postjudgment interest;

h.    Costs of this action; and

i.    Any such further relief as the Court deems fair and just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS, COUNTS, AND ISUES SO TRIABLE**.

Respectuflly submitted,
MELINDA SANTINI,
By her Attorneys,



Caitlin Beatty, Esq. (BBO #679228)
Corinne Hood Greene, Esq. (BBO #654311)
Greene & Hafer
529 Main St., Ste. 200
Charlestown, MA 02129
Ph. 617-396-4600
cbeatty@greeneandhafer.com
cgreene@greeneandhafer.com

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK COUNTY SUPERIOR COURT

|  |  |
|---|---|
| MELINDA SANTINI,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TUFTS MEDICAL CENTER PARENT, AND<br>　　　　CATHY MCCUE,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　C. A. No. 2084CV02658<br>)<br>)<br>)<br>)<br>) |

ACCEPTANCE OF SERVICE

Counsel for the Defendants hereby accepts service of the Summons and Complaint in this matter on behalf of Defendant Tufts Medical Center Parent and Defendant Cathy McCue.

| /s/Caitlin Beatty | /s/ Francis J. Bingham |
|---|---|
| Caitlin Beatty, Esq. (BBO #679228) | Francis Bingham, Esq. (BBO #682502) |
| Greene & Hafer, LLC | Littler Mendelson, P.C. |
| 529 Main St., Ste. 200 | One International Place, Suite 2700 |
| Charlestown, MA 02129 | Boston, MA 02110 |
| Ph. 617-249-4436 | Ph. 617-378-6075 |
| cbeatty@greeneandhafer.com | FBingham@littler.com |

Dated:　　　12/1/2020　　　　Dated: 12/04/20